UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MINERVA PASCUAL

       Petitioner,

    -against-

**MEMORANDUM & ORDER**

14 CV 6025 (RJD)

UNITED STATES OF AMERICA,

       Respondent.
-------------------------------------------------------X
DEARIE, District Judge.

  Minerva Pascual was convicted, after a jury trial at which she testified, of conspiracy to import and distribute cocaine and sentenced to a mandatory ten years' imprisonment. The United States Court of Appeals for the Second Circuit affirmed her conviction, United States v. Pascual, 502 Fed. Appx. 75 (Nov. 13, 2012) reh'g en banc denied May 1, 2013, cert. denied, 134 S. Ct. 231 (2013). Pascual now petitions for federal habeas relief pursuant to 28 U.S.C. § 2255.

  Although Pascual's protracted pro se papers at times border on the indecipherable, it is clear that her principal claim is a series of complaints about the performance of her trial attorney.[1] She asserts that counsel was ineffective because he declined the opportunity offered by the Court to reopen the suppression hearing to present additional evidence, did not seek clarification of the Court's final order denying suppression, failed to challenge the government's collection and use of cell-site data, and suffered from what Pascual labels a "conflict of interest." A separate claim advances the novel proposition that the government's failure to videotape

---

[1] Pascual's copious submissions include her motion to vacate, a declaration and memorandum of law in support, her motion to seal and accompanying memorandum of law, two motions to amend, a supplemental declaration, a reply, and numerous exhibits. See ECF nos. 1, 2, 5, 6, 8, 13, and 24.

Pascual's custodial interrogation violates the Fifth Amendment.

Mindful of Pascual's pro se status, and alerted by her to difficulties she apparently experienced in her efforts to prepare her submissions, the Court has afforded her every latitude in this proceeding.[2] The Court has of course extended this latitude to the task of interpreting even the most challenging passages in Pascual's submissions, which speak in a tone of exasperation and frenzy relentlessly suggestive of underlying substance. See generally Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (pro se papers are to be "construed liberally and interpreted to raise the strongest arguments that they suggest") (internal quotation marks, citation and emphasis omitted). At the end of the day, however, Pascual's materials simply do not establish a basis for Section 2255 relief and warrant only summary discussion.

## DISCUSSION

**The Legal Standards for Ineffective Assistance Claims**

To obtain federal habeas relief on a claim that counsel was ineffective, Pascual must show that counsel's conduct fell below an objective standard of reasonableness and that the alleged deficient conduct prejudiced her, *i.e.*, that there is a reasonable probability that but for the alleged shortcoming in counsel's performance, the outcome of her trial would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 695-96 (1984). Further, the Court need not reach the question of deficient performance but may dispose of the ineffectiveness claim solely because of a lack of prejudice. The Supreme Court has been unambiguous on this point:

---

[2] Among other things, the Court extended deadlines, twice made direct inquiries of personnel at the MDC and MCC in response to letters from Pascual asserting that she did not have full access to her file or research materials and received assurances that the circumstances were rectified, and in an abundance of caution yielded to Pascual's request to seal this proceeding.

> [T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

Strickland, 466 U.S. at 697.

**I. Pascual's Ineffectiveness Allegations**

Counsel's Election Not to
Re-Open the Suppression Hearing[3]

On Pascual's direct appeal, the Second Circuit rejected each of the four challenges she advanced against this Court's order denying suppression of the articles seized from her car. Pascual, 502 Fed. Appx. at 77-80. Marshaling the relevant facts, the Circuit concluded that "the agents clearly had probable cause to believe that evidence of narcotics offenses would be found in the car." Id. at 78. The Circuit further concluded that the timing and scope of the search were lawful, id. at 78-79, and that "[this Court's] holding and legal justification were perfectly clear." Id. at 79. Pascual's request for remand for additional fact-finding was rejected, with the Circuit observing that this Court "made its findings after a full suppression hearing, two trials, and multiple rounds of briefing by both parties." Id. Finally, the Circuit found that "Pascual's argument that the district court 'misspoke' when it ruled that there was probable cause to support the search, is fanciful." Id.

---

[3] A recitation of the underlying factual background is not necessary in this summary discussion, addressed only to the parties, whose familiarity with the record is assumed.

These appellate rulings, of course, are not subject to re-litigation here. United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009) cert. denied, 558 U.S. 1137 (2010) ("It is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal") (internal quotations and citations omitted). Further, the fastening of an ineffectiveness preamble to barred appellate claims does not revive them for section 2255 purposes. See, e.g., White v. United States, 2012 WL 2119104, *5 (S.D.N.Y. June12, 2012) ("[section 2255] [p]etitioner unsuccessfully argued on direct appeal that the jury instruction was incorrect and cannot now repackage that procedurally barred claim as an ineffective assistance of counsel claim"); Azzara v. United States, 2011 WL 5025010, at *6 (S.D.N.Y. Oct. 20, 2011) (section 2255 petitioner's "arguments . . . based on claims pursued on direct appeal, repackaged . . . as ineffective assistance of counsel claims . . . are procedurally barred").

To the extent the Circuit's suppression rulings do not entirely bar Pascual's 2255 claim that counsel should have sought to reopen the suppression hearing, the claim fails on the merits for lack of prejudice because Pascual does not identify what other relevant evidence could have been offered, and having presided over the suppression hearing and two trials, the Court has no reason to believe any such evidence exists.[4] The probability of a different suppression ruling,

---

[4] To be sure, Pascual *purports* to have identified additional evidence. For example, she asserts that such items as the video depicting her codefendant and others engaged in drug activity, or testimony from her attorney, would have weighed in favor of suppression. See, e.g., Pascual Reply, ECF # 24, at 2 ("The government maintains that there is no additional evidence [other than] what was presented in the two[-]day suppression hearing and the two trials. This claim is wholly untrue. The government is now aware that Mr. Dinnerstein['s] testimony could have assisted Pascual. Furthermore, the video of her codefendant, Hazel Cruz[,] was in the possession of the agents . . ."). The events on the recording, of course, have no conceivable relevance to the agents' seizure of items from Pascual's car, and the suggestion that Mr. Dinnerstein had relevant testimony to offer on this subject is simply wrong. To the extent Pascual is arguing that testimony from Mr. Dinnerstein at a re-opened suppression hearing "would have assisted [her]

4

therefore, does not exist, nor is it conceivable that but for the suppression ruling the result at trial would have been different.

Counsel's Election Not to Seek
Clarification of this Court's Suppression Ruling

Pascual's assertion that counsel failed to seek clarification of this Court's suppression ruling is simply wrong as a matter of fact.

From the outset, counsel was zealous in litigating the question: after the first trial, he filed a motion asking the Court to reconsider the denial of suppression, renewed the motion to suppress shortly before the end of the second trial, and renewed the application yet again after the verdict. See Submissions dated May 21, 2010, October 17, 2010, and October 28, 2010, 08-Cr-705, ECF nos. 172, 238 and 242. Counsel then twice moved for the clarification that Pascual now claims he failed to seek. He did so initially while Pascual's appeal was pending, so the Court lacked jurisdiction to entertain the application. See Letter dated Sept. 19, 2011, 08-Cr-705 ECF no. 320 ("I write . . . to seek clarification of a single sentence in this Court's November 3, 2010 decision granting Ms. Pascual's motion for reconsideration of its June 26, 2009 decision to deny the suppression of certain evidence seized from her car but ultimately affirming the denial

---

motion to suppress *her statement*," Pascual Reply, ECF # 24, at 2 (emphasis added), Pascual appears to be conflating her claims and misapprehending the trial record: First, the only aspect of the suppression proceeding that the Court revisited and invited the parties to re-open related to the seizure of articles from Pascual's car, not her statements. Second, the subject of possible testimony by Mr. Dinnerstein arises only with respect to Pascual's "conflict of interest" claim and, critically, relates only to the *post*-arraignment conversation among agents and counsel. As the parties are aware, that conversation, in turn, precipitated the Court conference on December 4, 2009, where the matter was fully explored and resolved; notably, the government confirmed at that time that only Pascual's *pre*-arraignment statements were part of its case. See Transcript of Proceedings, United States v. Pascual, 08-Cr-705, ECF # 83.

5

of suppression by Minerva Pascual"); Order dated September 20, 2011, 08-Cr-705 ECF no. 321). Less than a week after the Circuit issued its mandate, counsel renewed the request for clarification. See Letter dated May 14, 2013, 08-CR-705, ECF no. 332 ("Letter Renewing Request for Rule 36 Relief"). As the order denying clarification stated, the Court was satisfied with its ruling and declined to revisit it "in light of the Second Circuit's holding in [Pascual's appeal]." Order dated August 7, 2013, 08-Cr-705, ECF no. 335. As already noted, the Circuit had concluded, with respect to this Court's suppression ruling, that the "holding and legal justification were perfectly clear." Pascual, 502 Fed. Appx. at 79.

In sum, Pascual's claim that counsel was ineffective for failing to seek clarification of this Court's suppression ruling is baseless because counsel *did* seek such relief. In any event, any assertion of prejudice is foreclosed by the Circuit's confirmation, dispositive of Pascual's suppression-related claims here, that there existed probable cause to search Pascual's vehicle. Pascual, therefore, cannot show that some unspecified clarification of the Court's suppression order could have affected the verdict.

Additionally—again interpreting the muddled pro se allegations to raise the strongest arguments they suggest—to the extent Pascual is advancing a separate claim of ineffective assistance of *appellate* counsel and asserting therein that Strickland "prejudice" may lie in the way counsel handled the issue on appeal, there still exists no conceivable basis for habeas relief. Pascual cannot point to any variable that would have negated the existence of probable cause, altered the Second Circuit's view on the subject, or created reasonable doubt about her guilt.

Counsel's Election not to Challenge
the Cell-Site Records and Related Data

Pascual already raised, and the Second Circuit rejected, the essence of this claim.

6

Pointing to an August 2011 district court decision finding that a government request for 113 days' worth of cell-site records constituted a "search" requiring a warrant or probable cause, Pascual argued on appeal that the admission of the cell-site records at her trial was error because the government obtained the records by subpoena rather than by warrant or a showing of probable cause. See Pascual, 502 Fed. Appx. at 80 (summarizing Pascual's claim and the authority on which she relied). Reviewing the claim for plain error because it was not advanced at trial, the Second Circuit noted that the 2011 decision on which Pascual relied "is (at the very least) in some tension with prevailing case law" and that, "in any event was itself decided well after Pascual's trial," which occurred in October 2010. Id. The Circuit held, therefore, that "[i]t certainly was not plain error for the district court not to anticipate this innovative argument and *sua sponte* exclude the evidence, when no governing precedent from [the Second Circuit] or the Supreme Court required exclusion, and the general principles adopted by those courts pointed the other way." Id.

The rationale of the Circuit's finding that this Court did not commit plain error by admitting the records fully disposes of Pascual's claim that her attorney was ineffective for failing to seek to exclude them: *viz.*, this Court concludes that it was not objectively unreasonable for counsel not to advance an original argument contrary to prevailing Second Circuit and Supreme Court authority. In any event, because the Court would not have granted a motion to exclude premised on that argument, counsel's choice in the matter did not prejudice his client.[5]

---

[5] To the extent Pascual is separately claiming that she was prejudiced because counsel's failure to object at trial limited appellate review to the plain error standard, she also fails to establish a

The Conflict-of-Interest Claim

Pascual is at her most prolific and yet least coherent in asserting that counsel suffered from a conflict of interest during the time he represented her. However generously construed, the allegations simply do not establish a basis upon which section 2255 relief could granted.

The branch of the amorphous conflict claim plainly susceptible to adjudication relates to events that were fully explored in open court on December 4, 2009. See Transcript of Proceedings, 08-Cr-705, ECF no. 83. As the parties are aware, upon notice from the government of a potential conflict (arising out of the remote possibility that counsel might be needed as a witness to a brief conversation he had with government agents), the Court made the necessary inquiries of counsel and Pascual, and issued the necessary warnings to Pascual, before accepting her unequivocal waiver of the potential conflict. Pascual claims in her 2255 papers that the waiver she gave on December 4, 2009 was not made knowingly. The transcript of the proceeding, however, plainly belies this claim, and speaks for itself. The Court exercised abundant caution in its communication with Pascual, emphasizing that the matter was important and that she needed to be "absolutely certain" of any decision to waive the possible conflict. Nothing in the record or her 2255 papers gives the Court any reason to doubt the validity of the waiver that followed such admonitions. Pascual's claim to the contrary, consistent with her history of making false or reckless assertions before this Court, is therefore denied.

A second assertion advanced under the "conflict" umbrella that is susceptible to adjudication (although what it asserts is not properly a species of "conflict") relates to Pascual's misguided belief that her video recording of cocaine being removed from metal containers, in her

---

basis for federal habeas relief. No reasonable reading of the Circuit's decision suggests that *de novo* review of the cell site issue would have resulted in a different outcome.

presence, was some sort of bargaining chip that could have secured her benefits in the form of either a generous plea offer or substantial sentencing reduction. Her complaint against counsel is that he failed to advise her how to best make use of the video.

The assertion does not establish a basis for Section 2255 relief because, as noted, Pascual is plainly mistaken in her view about the value of the video's content, which places her in the midst of drug activity and thus refutes her longstanding claim of innocence. Pascual's belief that the video would have been the catalyst to fruitful cooperation with the government (and, in theory, an advantageous plea agreement) is not only speculative, but highly *un*likely in light of her dissembling throughout her time before this Court. With respect to sentencing, it was Pascual's own persistence in expressing her innocence—and not poor advice about the bargaining-value of the drug video—that made her ineligible for safety-valve relief. Strickland prejudice, therefore, cannot be shown.[6]

---

[6] Still, certain of Ms. Pascual's assertions simply elude analysis. For example, she asserts: "Minerva Pascual is entitled to a writ of habeas corpus . . . because her trial counsel provided inaccurate legal advice when failing to advise her that the conflict of interest effective [sic] the C.D. Ms. Pascual recorded and assumed it could have been used as a bargaining tool. Ms. Pascual claims that trial counsel failed to advise her that if the conflict was waived she would not be able to properly introduce the C.D. that Ms. Pascual had previously recorded prior to her arrest." Motion to Seal and Motion Pursuant to 28 U.S.C. § 2255, ECF no. 1 at 11. In a declaration, Pascual asserts: "At a post-trial proffer session I was info[rm]ed about a statute of limitation for a C.D I had made prior to my arrest. Mr. Dinnerstein never info[rm]ed me about a 'statute of limitation' for any and all of [the] information that I had, nor for the C.D to be turned into the government. I provided the tape/c.d. to Mr. Dinnerstein before the Cur[c]io Hearing, proffer session, and trial(s). Had I known about the statute of limitation, I would have never waived the conflict of interest presented to me by the government. . . . Had I not been misadvised about he C.D/Tape I would have used Mr. Di[nn]erstein as my witness. I would not have had him as my lawyer. I was under the impression that the C.D. was going to put me in a bargaining position." Declaration dated October 21, 2014, ECF no. 6 at 3.

Based on its extensive experience with this defendant, the Court is confident that there is no bona fide claim buried in the quoted passages. What Pascual has done, it seems clear, is simply seized

**II. The Fifth Amendment Claim**

Pascual does not argue—indeed, she never has—that her confession was coerced. Instead, as a ground for habeas relief, she advances the narrow and novel claim that the government's failure to record her custodial interrogation violates her Fifth Amendment right to due process. There is no basis whatsoever in Fifth Amendment jurisprudence for such a notion, see e.g., United States v. Gualtero, 62 F.Supp.3d 479, 487 (E.D.Va. Nov. 24, 2014) (the Constitution does not require taping or recording of custodial interrogations) (collecting cases), nor any support for Pascual's view that a policy change at the Department of Justice—which

---

upon the subject of counsel's possible "conflict"—which was limited to the narrow matter of whether he might have to testify as to the nature of the permission he gave when allowing Pascual to accompany the agents after arraignment—and run amok with it, invoking it as a basis for calling into question earlier-occurring and entirely unrelated acts of counsel.

The culmination of Pascual's combined misapprehensions about the value of the incriminating drug video and the nature and scope of the "conflict" issue is her invocation of the Supreme Court's decisions in LaFler v. Cooper, 132 S.Ct. 1376 (2012) (holding that when counsel's ineffectiveness results in rejection of a plea offer, Strickland prejudice test requires defendant to show reasonable probability that, with competent advice, outcome of the plea process would have been different) and Missouri v. Frye, 132 S. Ct. 1399 (2012) (holding that counsel has a constitutional duty to communicate formal plea offer to his client). These authorities do not support either the proposition that counsel had a duty to secure a favorable plea offer or any aspect of Pascual's 2255 claims.

Still and all, the Court must register its disappointment with Mr. Dinnerstein. The Court requested that he shed light on his client's claims relating to his communications with her, the content of which only he and she know. See Order to Show Cause dated November 20, 2014, ECF no. 7 (ordering, inter alia, that the government's return "shall include an affidavit from counsel addressing [the ineffectiveness] allegations."). Mr. Dinnerstein, however, declined to furnish a statement. See Government Motion dated March 18, 2015, ECF. No. 12 at 2 (advising that, in response to the Order to Show Cause, Mr. Dinnerstein responded, by email, as follows: "I will not discuss this matter with you privately. If l am ordered to by the Court to file an affidavit, I of course will. I still represent Minerva and will not do anything that can be perceived as not acting within her best interest. I think for me to do anything else would be in violation of my ethical obligations to Minerva.").

now requires federal law enforcement agencies to record certain custodial interrogations—creates a right of constitutional dimension with retroactive reach.[7]

## CONCLUSION

For the foregoing reasons, the application for relief under 28 U.S.C. § 2255 is denied in its entirety and the petition is dismissed. Pascual has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), so no certificate of appealability shall issue.

Additionally, the prior order of this Court provisionally sealing these proceedings at Pascual's request shall be vacated and the matter unsealed.

SO ORDERED.

Dated: Brooklyn, New York
October 27, 2015 /s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge

---

[7] The policy change, which took effect July 11, 2014, was announced by the DOJ in a May 22, 2014 memorandum entitled *"New Department Policy Concerning Electronic Recording of Statements"* which states, inter alia, that "[t]his policy . . . is not intended to, does not, and may not be relied upon to create any rights or benefits, substantive or procedural, enforceable at law or in equity in any matter, civil or criminal . . .." See also "Dep't of Justice, New Department Policy Concerning Electronic Recording of Statements," 128 Harv. L. Rev. 1552 (Mar. 10, 2015).